Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRENT PETERSON, <br><br> Plaintiff, <br><br> vs. <br><br> ICOSAVAX, INC., PETER KOLCHINSKY, HEIDI KUNZ, MARK MCDADE, JOHN W. SHIVER, ADAM SIMPSON, ANN VENEMAN and JAMES WASSIL, <br><br> Defendants. | Case No.: <br><br> **Complaint For:** <br><br> (1)  Violation of § 14 (e) of the Securities Exchange Act of 1934 <br> (2)  Violation of § 14 (d) of the Securities Exchange Act of 1934 <br> (3)  Violation of § 20(a) of the Securities Exchange Act of 1934 <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, Brent Peterson ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder action against Icosavax, Inc. ("Icosavax" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14(d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants'

efforts to sell the Company to AstraZeneca Finance and Holdings Inc. ("Parent") through a wholly owned subsidiary, Isochrone Merger Sub Inc. ("Merger Sub," and  together with Parent, "AstraZeneca") as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a December 12, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, in exchange for each share of Icosavax common stock owned, Icosavax shareholders will receive $15.00 per share plus one contingent value right ("CVR") which represents the contractual right to receive a contingent payment of $5.00 in cash if certain conditions are met. [1]

3.      Thereafter, on December 27, 2023, Icosavax filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Icosavax shares in favor of the Proposed Transaction.   The

---

[1] 1.      Per the terms of the Merger Agreement: (i) $4.00, subject to applicable withholding taxes and without interest, if, and only if, the U.S. Food and Drug Administration (FDA) approves the Company's candidate vaccine, IVX-A12, any vaccine incorporating IVX-A12, or any vaccine covered by the Company's patent rights (each a Product) for use in the prevention of diseases or conditions caused by respiratory syncytial virus (RSV) and any disease or condition caused by human metapneumovirus (hMPV) or human parainfluenza virus 3, in an older adult population, regardless of whether such approved Product has FDA approval as a combination product for use in the prevention of additional other diseases or conditions prior to the sixth anniversary of the effective time of the Merger; and (ii) $1.00, subject to applicable withholding taxes and without interest, if, and only if, a Selling Entity (as defined in the CVR Agreement) achieves $200 million cumulative net sales of all Products in the aggregate in the European Union, the United Kingdom and Canada prior to the seventh anniversary of the effective time of the Merger.

Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.

5.      As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Icosavax, provided by Icosavax to the Company's financial advisor Centerview Partners LLC ("Centerview"); (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion by Centerview and provided to the Company and the Board; and (d) potential conflicts of interest related to Centerview. Accordingly, this action seeks to enjoin the Proposed Transaction.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.      Plaintiff is a citizen of Minnesota and is an Icosavax stockholder.

8.      Defendant Icosavax is incorporated in the State of Delaware, has its principal executive offices located at 1930 Boren Avenue, Suite 1000, Seattle, Washington 98101 and its shares trade on the Nasdaq Capital Market under the ticker symbol "ICVX."

9.      Defendant Peter Kolchinsky ("Kolchinsky") has been a Director of the Company at all relevant times.

10.     Defendant Heidi Kunz ("Kunz") has been a Director of the Company at all relevant times.

11.     Defendant Mark McDade ("McDade") has been a Director of the Company at all relevant times.  In addition, McDade serves as the Chair of the Company Board.

12.     Defendant John W. Shiver ("Shiver") has been a director of the Company at all relevant times.

13.     Defendant Adam Simpson ("Simpson") has been Chief Executive Officer ("CEO") and a Director of the Company at all relevant times.

14.     Defendant Ann Veneman ("Venneman") has been a director of the Company at all relevant times.

15.     Defendant James Wassil ("Wassil") has been a director of the Company at all relevant times.

16.     Defendants identified in ¶¶ 9-15 are collectively referred to as the "Individual Defendants."

17.     Non-Party Parent AstraZeneca is a global, science-led biopharmaceutical company that focuses on the discovery, development, and commercialization of prescription medicines in Oncology, Rare Diseases, and BioPharmaceuticals, including Cardiovascular, Renal & Metabolism, and Respiratory & Immunology.

18.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(d), 14(e), and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The

Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

20.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

22.     Icosavax a biopharmaceutical company, develops vaccines against infectious diseases through virus-like particle (VLP) platform technology. Its lead product candidate IVX-A12, a respiratory syncytial virus (RSV) and human metapneumovirus (hMPV) VLP vaccine. Its pipeline includes additional candidates that provide optionality as potential components of future combination and pan-respiratory vaccines, including influenza and SARS-CoV-2.

23.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the November 14, 2023 press release announcing its 2023 Q3 financial results, the Company highlighted such milestones as

Cash and cash equivalents and short-term investments as of September 30, 2023 was $229.2 million, compared to $219.4 million for the period ended December 31, 2022.

24.     Speaking on these positive results, CEO Defendant Bennett commented on the Company's positive financial results as follows, "We are pleased with our clinical data updates and continued pipeline progress this year. IVX-A12, our potential first-in-class combination vaccine candidate for RSV and hMPV, could address a significant unmet need and represent a large market opportunity for the company. Our Phase 2 study for IVX-A12 remains on track to report topline interim results by the end of 2023, and our Phase 1 six-month durability data in the first quarter of 2024 gives us another opportunity to show a potentially differentiated profile for our VLP-based technology. In addition, we today announced candidate selection for our SARS-CoV-2 and influenza programs. While we are not pursuing further development of these candidates at this time, they provide strategic optionality for potential future pan-respiratory vaccines and also highlight our company's antigen design capabilities."

25.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Icosavax.  Clearly, based upon these positive financial results and outlook, the Company is likely to have future success.

26.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Icosavax to enter into the Proposed Transaction without providing requisite information to Icosavax stockholders such as Plaintiff.

***The Flawed Sales Process***

27.     As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the

Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

28.     The Recommendation Statement fails to disclose whether a committee of independent board members was created to run the sales process.  If such a committee was created, the Recommendation Statement should disclose the members of that committee and its specific powers.  On the other hand, if no such committee was created, the Recommendation Statement should disclose the specific reasoning for not creating such a committee.

29.     The Recommendation Statement also fails to adequately disclose why a portion of the merger consideration was included in the form of a non-guaranteed CVR.

30.     Additionally, the Recommendation Statement is silent as to the nature of the confidentiality agreement entered into between the Company and AstraZeneca, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Recommendation Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

31.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

32.     On December 12, 2023, 2023, Icosavax and AstraZeneca issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> SEATTLE, Dec. 11, 2023 (GLOBE NEWSWIRE) -- Icosavax, Inc. (Nasdaq: ICVX) today announced it has entered into a definitive agreement pursuant to which AstraZeneca, through an acquisition subsidiary, will initiate a tender offer to acquire all of Icosavax's outstanding shares for a price of $15.00 per

share in cash at closing, plus a non-tradable contingent value right to receive up to $5.00 in cash, payable upon achievement of specified regulatory and net sales milestones.

The upfront cash portion of the consideration represents an equity value of approximately $838 million and a 43% premium over Icosavax's closing market price on December 11, 2023, and a 73% premium to Icosavax's volume-weighted average price for the preceding 60 trading days. Combined, the upfront and maximum potential contingent value payments represent, if achieved, an equity value of approximately $1.1 billion and a 91% premium over Icosavax's closing market price on December 11, 2023, and a 130% premium to Icosavax's volume-weighted average price for the preceding 60 trading days.

The closing of the tender offer is subject to certain conditions, including the tender of shares representing at least a majority of the total number of Icosavax's outstanding shares, and other customary closing conditions and regulatory clearances. Upon the successful completion of the tender offer, a subsidiary of AstraZeneca will be merged with and into Icosavax and any remaining shares of common stock of Icosavax will be cancelled and converted into the right to receive the same consideration (including the contingent value right) per share payable in the tender offer. Subject to the satisfaction of the conditions in the merger agreement, the acquisition is expected to close in the first quarter of 2024.

Adam Simpson, Chief Executive Officer, Icosavax, said, "We are pleased to announce the proposed acquisition of Icosavax by AstraZeneca as we believe it offers the opportunity to accelerate, and expand access to, our potential first-in-class combination vaccine for older adults at risk from RSV and hMPV. We look forward to combining our skills and expertise in advancing the development of IVX-A12, with AstraZeneca's decades of experience in RSV, resources, and capabilities in late-stage development."

Iskra Reic, Executive Vice President, Vaccines & Immune Therapies, AstraZeneca, said: "This virus-like particle vaccine technology has the potential to transform prevention against severe infectious diseases, including RSV and hMPV. With the addition of Icosavax's Phase III-ready lead asset to our late-stage pipeline, we will have a differentiated, advanced investigational vaccine, and a platform for further development of combination vaccines against respiratory viruses. This aligns with our strategy to deliver a portfolio of therapies to address high unmet needs in infectious diseases, and our ambition to protect the most vulnerable patients who have high risk of severe outcomes."

Concurrent with this press release, Icosavax issued a press release announcing positive topline interim results for Icosavax's Phase 2 study of IVX-A12, a combination virus like particle (VLP) vaccine candidate targeting both respiratory syncytial virus (RSV) and human metapneumovirus (hMPV). The press release can be found at www.icosavax.com.

Centerview Partners LLC is serving as exclusive financial advisor to Icosavax and Latham & Watkins LLP is serving as legal counsel.

### About Icosavax

Icosavax is a biopharmaceutical company leveraging its innovative VLP platform technology to develop vaccines against infectious diseases, with an initial focus on life-threatening respiratory diseases and a vision for combination and pan-respiratory vaccines. Icosavax's VLP platform incorporates antigen design capabilities and technology to enable multivalent, particle-based display of complex viral antigens, which it believes will induce broad, robust, and durable protection against the specific viruses targeted. Icosavax's lead program is a combination vaccine candidate targeting respiratory syncytial virus (RSV) and human metapneumovirus (hMPV). Its pipeline includes additional candidates that provide optionality as potential components of future combination and pan-respiratory vaccines, including influenza and SARS-CoV-2. Icosavax was formed in 2017 to advance the breakthrough VLP technology from the Institute for Protein Design at the University of Washington with the goal to discover, develop, and commercialize vaccines against infectious diseases. Icosavax is located in Seattle.

*Potential Conflicts of Interest*

27.     The breakdown of the benefits of the deal indicates that Company insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Icosavax.

28.     Company insiders currently own large, illiquid portions of Company stock, large amounts of company options, and other equity awards, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.

| Name | Number of Shares Beneficially Owned (#) | Cash Consideration for Shares Beneficially Owned ($)(1) | Maximum Cash Consideration for CVRs in Respect of Shares Beneficially Owned ($)(2) |
| --- | --- | --- | --- |
| *Executive Officers* | | | |
| Adam Simpson* | 1,050,281(3) | 15,754,215 | 5,251,405 |
| Cassia Cearley, Ph.D. | 130,694 | 1,960,410 | 653,470 |
| Niranjan Kanesa-thasan, M.D. | 223,980 | 3,359,700 | 1,119,900 |
| M. Amin Khan, Ph.D. | — | — | — |
| Thomas Russo | 38,037 | 570,555 | 190,185 |
| *Non-Employee Directors* | | | |
| Mark McDade | 3,579,347(4) | 53,690,205 | 17,896,735 |
| Peter Kolchinsky, Ph.D. | 5,969,108(5) | 89,536,620 | 29,845,540 |
| Heidi Kunz | 11,376 | 170,640 | 56,880 |
| John W. Shiver, Ph.D. | 5,232 | 78,480 | 26,160 |
| Ann Veneman | 11,209 | 168,135 | 56,045 |
| James Wassil | 3,695 | 55,425 | 18,475 |

| Name | Number of Shares Subject to In the Money Options (#) | Cash Consideration for In the Money Options ($)(1) | Number of CVRs Issued in Respect of In the Money Options (#) | Maximum Cash Payment for CVRs Issued in Respect of In the Money Options ($)(2) | Number of Shares Subject to Out of the Money Options (#) | Maximum Cash Payment in Respect of Out of the Money Options ($)(3) |
| --- | --- | --- | --- | --- | --- | --- |
| *Executive Officers* | | | | | | |
| Adam Simpson* | 2,254,157 | 21,760,322 | 2,254,157 | 11,270,785 | 692,866 | 2,653,772 |
| Cassia Cearley, Ph.D. | 527,189 | 5,215,352 | 527,189 | 2,635,945 | 172,650 | 635,280 |
| ranjan Kanesa-thasan, M.D. | 446,054 | 4,643,949 | 446,054 | 2,230,270 | 206,450 | 823,278 |

| | | | | | | |
|---|---|---|---|---|---|---|
| M. Amin Khan, Ph.D. | 300,000 | 1,584,000 | 300,000 | 1,500,000 | — | — |
| Thomas Russo | 601,590 | 4,842,520 | 601,590 | 3,007,950 | 172,000 | 670,025 |
| *Non-Employee Directors* | | | | | | |
| Mark McDade | 39,278 | 281,803 | 39,278 | 196,390 | — | — |
| Peter Kolchinsky, Ph.D. | 39,278 | 281,803 | 39,278 | 196,390 | — | — |
| Heidi Kunz | 64,544 | 472,813 | 64,544 | 322,720 | — | — |
| John W. Shiver, Ph.D. | 26,643 | 171,246 | 26,643 | 133,215 | — | — |
| Ann Veneman | 39,278 | 281,803 | 39,278 | 196,390 | 25,500 | 127,500 |
| James Wassil | 61,556 | 476,735 | 61,556 | 307,780 | — | — |

29. Furthermore, certain employment agreements with certain Icosavax executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them, millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Named Executive Officer | Cash ($)(1) | Equity ($)(2)(3) | Perquisites/ Benefits ($)(4) | Total ($) |
|---|---|---|---|---|
| Adam Simpson | 1,401,975 | 16,928,057 | 43,836 | 18,373,868 |
| Cassia Cearley, Ph.D. | 649,600 | 4,322,105 | 28,835 | 5,000,540 |
| Niranjan Kanesa-thasan, M.D. | 670,600 | 3,914,488 | 33,881 | 4,618,969 |

| Name | Base Salary Severance ($) | Bonus Severance ($) |
|---|---|---|
| Adam Simpson | 904,500 | 497,475 |
| Cassia Cearley, Ph.D. | 464,000 | 185,600 |
| Niranjan Kanesa-thasan, M.D. | 479,000 | 191,600 |

30.     The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation. Communications regarding post-transaction employment, during the negotiation of the underlying transaction, must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

31.     Thus, while the Proposed Transaction is not in the best interests of Icosavax, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

32.     On December 27, 2023, the Icosavax Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

33.     Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose:

a.   Adequate disclosure regarding whether any Special Committee was created to run the sales process, and if so whether that committee was empowered to veto a potential transaction not in the best interest of common shareholders;

b.   In the event that no Special Committee was created to run the sales process, adequate disclosure of the reasoning underlying that decision;

c.   Adequate disclosures as to why a portion of the merger consideration was included as a non-guaranteed CVR;

d.   Whether the terms of any confidentiality agreements entered during the sales process between Company on the one hand, and any other third party (including AstraZeneca), if any, differed from one another, and if so, in what way;

e.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, if any, would fall away; and

f.   The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction, which must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Icosavax's Financial Projections*

34.     The Recommendation Statement fails to provide material information concerning financial projections for Icosavax provided by Icosavax management and relied upon by Centerview in its analyses.

35.     Notably, in its fairness opinion, Centerview indicates that it reviewed, "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of the Company, including certain financial forecasts, analyses and projections relating to the Company and the probability of achieving the applicable milestones under the CVR Agreement prepared by Company management and furnished to Centerview by the Company for purposes of Centerview's analysis."

36.     The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that Icosavax management provided to the Board and Piper. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

41.     With regard to *Unaudited Prospective Financial Information*, the Recommendation Statement fails to disclose material line items, including the following:

        a.   The specific inputs, metrics, and assumptions used to determine the Total Net Revenue for the fiscal years ending December 31, 2024, through 2042;

b.  The specific inputs, metrics, and assumptions used to determine the Gross Profit for the fiscal years ending December 31, 2024, through 2042;

c.  EBIT, including the underlying inputs, metrics, and assumptions used to determine the same, including specifically: earnings before interest and taxes, and Gross Profit less operating expenses, including research and development, sales and marketing, and general and administrative expenses; and

d.  Unlevered Free Cash Flow, including the underlying inputs, metrics, and assumptions used to determine the same, including specifically, tax expenses (if profitable and excluding the impact of NOL usage), depreciation and amortization, capital expenditures, and changes in net working capital.

37.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

38.    Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Centerview's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction.  As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

39.    In the Recommendation Statement, Centerview describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail

to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

40.     With respect to the *Analysis of Consideration*, the Recommendation Statement fails to disclose the following:

    a.  The specific metrics used to determine the range of discount rates of 13.75% to 15.75% utilized; and

    b.  The specific metrics used to determine the Company's weighted average cost of capital.

41.     With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

    a.  The specific metrics used to determine the discount rates ranging from 13.75% to 15.75% utilized;

    b.  The company's weighted average cost of capital utilized, and the specific inputs and metrics used to determine the same;

    c.  The specific metrics utilized in the forecasted risk-adjusted, after-tax unlevered free cash flows of the Company over the period beginning on January 1, 2024 and ending on December 31, 2042;

    d.  The Company's implied terminal value utilized and the specific metrics, inputs, and assumptions used to determine the same;

    e.  The specific metrics, inputs, and assumptions used to determine that unlevered free cash flows would decline in perpetuity after December 31, 2042 at a rate of free cash flow decline of 10% year over year;

      f.   The specific inputs, metrics, and assumptions used to determine the Company's estimated future losses; and

      g.   The specific metrics used to determine the net present value of the estimated cost of an assumed $150 million equity raise in 2024, $750 million equity raise in 2025, $750 million equity raise in 2027 and $300 million equity raise in 2028; and

      h.   The specific metrics used in determining the 10% discount and 5% spread utilized.

42.    With respect to the *Analyst Price Target Analysis*, the Recommendation Statement fails to disclose the following:

      a.   The specific price targets analyzed; and

      b.   The specific Wall Street firms that created the analyzed price targets.

43.    With respect to the *Precedent Premiums Paid Analysis*, the Recommendation Statement fails to disclose the following:

      a.   The specific transactions analyzed;

      b.   The specific price targets analyzed;

      c.   The metrics used to determine the premia reference range of 50% to 75% utilized; and

      d.   The metrics used to determine the premia reference range of 65% to 90% utilized.

44.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

45.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

### FIRST COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

46.     Plaintiff repeats all previous allegations as if set forth in full herein.

47.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

48.     Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

49.     The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

50.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

51.     The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

52.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

53.     Plaintiff has no adequate remedy at law.

**SECOND COUNT**

**Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9**

**<u>(Against all Defendants)</u>**

54.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

55.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

56.     Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

57.     SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

58.     Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts,

including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

59.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

60.     Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

61.     Plaintiff repeats all previous allegations as if set forth in full herein.

62.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

63.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The

Individual Defendants were able to, and did, control the contents of the Recommendation Statement.   The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

64.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Icosavax's business, the information contained in its filings with the SEC, and its public statements.   Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

65.     The Individual Defendants acted as controlling persons of Icosavax within the meaning of Section 20(a) of the Exchange Act.   Because of their position with the Company, the Individual Defendants had the power and authority to cause Icosavax to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Icosavax and all of its employees.   As alleged above, Icosavax is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.   By reason of their conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: January 2, 2024

**BRODSKY & SMITH**

By: *Evan J. Smith*

Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*